HARDY, Judge.
This is a compensation suit in which plaintiff claims to have sustained perma *73 nent total disability while in the course and scope of his employment. After trial on the merits there was judgment in favor of plaintiff and against the defendant employer and its insurer awarding compensation at the rate of $30 per week for a period not exceeding 400 weeks, from which judgment defendants have appealed.
Defendants filed exceptions of no right or cause of action based upon the contention that plaintiff’s petition failed to allege an accident within the requirements of the statute. After argument the exceptions were overruled by the trial judge for reasons set forth in a written opinion. Despite the fact that the exceptions' are re-urged before this court, we find it unnecessary to consider same in view of the conclusion which has been reached after consideration on the merits as hereinafter set forth.
The. essential averments to plaintiff’s action are set forth in Articles 5 to 9, inclusive, of the petition, which read as follows:
“5.
“Shows that in his employment with said Remington Rand, Inc., petitioner was employed as a switchman and train service man, which employment required petitioner to ride freight cars, to throw, switches on the tracks, and to get on and off freight cars while moving, and he was, therefore, engaged in a hazardous occupation within the meaning of the Workmen’s Compensation Acts of the State of Louisiana. [LSA-R.S. 23:1Q21 et seq.]
“6. .
“Shows that from the beginning of his said employment ,to the time petitioner’s work was terminated, petitioner was required to jump from moving freight cars elevated approximately three feet from the ground, landing on rocks, cross ties and hard ground.
“7.
“Shows that petitioner’s employment made it necessary for him to jump from the said freight cars approximately one hundred times per day, all of which was within the course and scope of petitioner’s employment as a trainman and switchman.
“8.
“Shows that as a result'of jumping from the freight cars during the period of petitioner’s employment, and as ■ a result of the constant traumas received from the jumping, petitioner sustained an injury to his lumbar spine, which petitioner alleges on information and belief, to be a spondylolisthesis of the fifth lumbar vertebrae on the sacrum and a sprain of the lumbosacral ligaments.
“9.
■ “Shows that the condition above referred to has totally and permanently disabled petitioner from performing the type of work he was engaged in while employed by said Remington Rand, Inc. and petitioner further shows, on information and belief that he will be permanently disabled as a* result of said injuries.”
■ It is noted- from the above that plaintiff did not allege, and certainly he did not succeed in establishing the occurrence of any definite and certain accident as the basis for his claims. It is urged that plaintiff’s disability arising from a spondylolisthesis of the fifth lumbar vertebrae is the result of numerous minor trauma consisting of shocks and jars to the spinal column sustained in the course of his employment which have been cumulative in nature, and, as a result, have brought about his disabled condition.
1 Plaintiff relies upon the medical testimony of two expert witnesses, a specialist in internal medicine and a" specialist in orthopedics, and the lay testimony of himself, his wife, and an elderly neighbor. •
, The testimony of plaintiff’s medical witness is inconclusive and, in the most favorable light, can only be considered as presenting the existence of a speculative and *74 conjectural possibility of causal relationship between plaintiff’s employment and his disability. As opposed to the uncertain conclusions of these witnesses defendant tendered the very positive conclusion resulting from plaintiff’s examination by a specialist in orthopedic surgery to the effect that he could find no evidence of disability. This witness did find an indication of a spondylolisthesis which he characterized as a “defect”, but he could not justify a finding either of causation or aggravation of this condition traceable to plaintiff’s employment.
On the basis of the expert testimony we think a proper resolution would be to the effect that plaintiff has failed to establish either an accidental injury or an aggravation of a pre-existing condition connected with his employment with that degree of certainty which is required even under the liberal allowances accorded in the evaluation of such evidence in cases involving workmen’s compensation.
In the light of the conflict in the medical testimony it is appropriate to give careful consideration to the testimony of the lay witnesses. The testimony of plaintiff himself was so confused, uncertain and unconvincing that it completely failed to support his claims. Plaintiff’s counsel apparently felt called upon to offer some explanation, which he set forth in brief as follows:
“We realize that the testimony of Mr. Dunn previously discussed is rather confusing, but it is about as to be expected from an illiterate individual of Mr. Dunn’s type.”
The record completely negatives any conclusion of illiteracy and, on the contrary, consideration of plaintiff’s testimony indicates an understanding and response to examination which is completely at variance with any suggestion of illiteracy. The testimony of plaintiff’s wife and an elderly neighbor has little, if any, value, inasmuch as the effect of such testimony bears primarily upon plaintiff’s complaints and physical condition and entirely fails to affect the question of causal connection.
Although plaintiff repeatedly testified that he had complained of his pain and disability to other members of the train crew to which he was attached, he produced no witness in corroboration of his own testimony on this point, nor, indeed, did he offer the testimony of any of his fellow employees.
Plaintiff’s work record indicates that he was employed on February 10, 1953, worked until March 5th when he began a leave of absence from which he returned on March 26th; that he was absent from work April 27th, 28th and 29th; that he began a leave of absence on May 6th, returned to work from such leave on June 4th and worked until June 10th when he began another leave of absence, after which he made no effort to return to work. The leaves of absence, which, as may be noted, were of rather frequent occurrence and somewhat extended duration, were procured by plaintiff upon the representation of what can best be described as a general physical indisposition and were unaccompanied, so far as the record discloses, by any nature of accident, injury or disability resulting from his employment. It appears conclusively that plaintiff took the leave of absence beginning May 6th for the purpose of attending to some private business, principally concerned with the moving of a dwelling house which he had purchased.
On the evidence reflected by the record itself we think plaintiff has signally failed to establish either an accident, in the course of his employment, which resulted in disability or an aggravation of any pre-exist-ing condition, and it follows that his demands should be rejected.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of defendants rejecting plaintiff’s demands at his cost.